HUDSON REAL ESTATE CO. *vs.* HERMAN C. TOWER
& another.

Middlesex.    January 15, 1892. — February 26, 1892.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Subscription to Stock — Withdrawal by Subscriber.*

A subscription to shares of the capital stock of a contemplated corporation is a
mere proposition or offer, and, before the organization of the corporation, may
be withdrawn, like any other unaccepted offer.

The defendant, who was sued on his subscription to shares in the capital stock of
a corporation to be subsequently formed, offered to show that he subscribed
upon the express understanding with the solicitor of subscriptions that "they
would raise the full amount by subscription, and not mortgage the property";
that in consequence thereof the meeting of subscribers voted "that there shall
be no mortgage on the property"; that thereafter and before anything was
done by the subscribers, one of their number informed the defendant that they
intended to rescind the vote whereby they voted not to mortgage, and the de-
fendant said that, if they did, "he would n't pay a penny of his subscription";
and that thereafter the subscribers so voted to rescind, and formed a corpora-
tion which placed a mortgage on the property in consequence of a vote so to
do. The defendant further offered to show that nothing had been done by the
subscribers in consequence of said subscriptions before his revocation. The
court ruled that the above would not constitute a defence, and directed a ver-
dict for the plaintiff. *Held,* that there was evidence which would warrant a
finding that the defendant withdrew before his subscription became a contract.

CONTRACT to recover the amount of a subscription by the de-
fendants, who were copartners, toward the erection of a factory.
At the trial in the Superior Court, before *Hammond*, J., it ap-
peared that the defendants signed the subscription paper in
question.    In defence they offered to show that one Harriman,
as a solicitor of subscriptions for the capital stock of the corpora-
tion which was to be formed at some time after the subscription
was made, asked the defendant Herman C. Tower to subscribe;
that Tower said that, if the subscribers were going to mortgage
the property to be bought with the subscriptions, his subscrip-
tion would be merely nominal, but that if they would raise the
full amount by subscription and not mortgage the property he
would subscribe for ten shares, or five hundred dollars' worth;
that Harriman thereupon asked him to subscribe with that un-
derstanding, but he declined to do it; that, Harriman urging

again that he should subscribe upon that understanding, Tower said that he would put down his name if it was understood between them that that was the condition of his subscription, and upon this assurance from Harriman he did subscribe at the time for that amount; that thereafter Harriman reported to the meeting of the subscribers the condition of the defendants' subscription, and that in consequence of that report the meeting voted " that there shall be no mortgage on the property"; that thereafter, and before anything was done by the subscribers, one of them, then active in their affairs and later president of the corporation, informed Tower that they intended to rescind the vote whereby they voted not to mortgage; that thereupon Tower told this gentleman that, if they so voted, he would n't pay a penny of his subscription; that this information had come to the ears of a number of the subscribers, that thereafter, namely, upon August 31, 1889, they voted, " that the vote whereby we voted, August 14, 1889, not to place a mortgage on the property, be rescinded"; that thereafter the subscribers formed a corporation, and the corporation did, on April 1, 1890, place a mortgage for $17,000 upon the property. The defendants further offered to show that nothing had been done by the subscribers, in consequence of the subscriptions, before the revocation by the defendants.

The court ruled that this would not constitute a defence, and directed a verdict for the plaintiff; and the defendants alleged exceptions.

*J. W. Corcoran*, for the defendants.

*J. T. Joslin*, for the plaintiff.

ALLEN, J.   At the time when the defendant signed the subscription paper declared on, it was not a contract, for want of a contracting party on the other side; but it has now been established that a subscription of this sort becomes a contract with the corporation when the corporation has been organized, and in this way the objection of the want of a proper contracting party is finally avoided, provided everything goes on as contemplated without any interruption.   Until the organization of the corporation, the subscription is a mere proposition or offer, which may be withdrawn, like any other unaccepted offer.   Unless the signer is bound upon a contract, he is not bound at all.   It

is open to him to withdraw. It is not on the ground that there was no sufficient consideration. The seal would do away with any doubt on that score. But it is on the ground that for the time being and until the corporation is organized the writing does not take effect as a contract, because the contemplated party to the contract, on the other side, is not yet in existence, and for this reason, there being no contract, the whole undertaking is inchoate and incomplete, and since there is no contract the party may withdraw. *Limerick Academy* v. *Davis,* 11 Mass. 113. *Thompson* v. *Page,* 1 Met. 565. *Ives* v. *Sterling,* 6 Met. 310. *Perkins* v. *Union Button-Hole & Embroidery Machine Co.* 12 Allen, 273. *Athol Music Hall Co.* v. *Carey,* 116 Mass. 471. *Phipps* v. *Jones,* 20 Penn. St. 260.

In the present case, there was evidence which would warrant a finding that the defendant thus withdrew, before the time came when his subscription would have become a contract.

*Exceptions sustained.*