Wachtler, J.
(dissenting). For almost a century, the common law of New York has provided that absent some form of contractual agreement between an employee and employer establishing a durational period, the employment is presumed terminable at the will of either party and the employee states no cause of action or breach of contract by alleging that he or she has been discharged (Martin v New York Life Ins. Co., 148 NY 117). Plaintiff seeks to avoid the effect of this rule by alleging that a statement in defendant’s personnel manual, entitled “McGraw-Hill and You”, that employees would be dismissed “for just and sufficient cause only”, together with a reference to the manual in a printed application form he signed when he applied to defendant for employment, constitutes an agreement by defendant to employ him “for the remainder of his working life”.
In my view, as a matter of law, neither document alone nor in combination contains any language indicating that defendant intended to be bound by their contents. Thus no question of fact was presented for jury consideration and the court below properly dismissed the first cause of action for breach of contract. The employment in question was terminable at the will of either party and plaintiff has no cause of action against defendant for breach of contract simply because he was discharged.
The printed application form, entitled “employment application”, spells out none of the critical terms of plaintiff’s employment. No reference is made to the type of work plaintiff was being considered for, salary, or the duration of the hiring. In fact, nothing either explicitly or implicitly suggests that defendant has offered plaintiff a position or that plaintiff has accepted an offer of employment.
*468 Significantly, the application form contains the words “do not write below this line” directly beneath the space provided for the applicant’s signature, and below the line is a space for the interviewer to record his name, followed by another section captioned “record of employment (to be completed by Requisitioner)”. This space, along with another entitled “Additional Approval” are signed by company officials to record “Applicant employed as Senior Copywriter will begin work on October 20,1969 at a salary of $15,000 per year”. (Plaintiff signed the form on Sept. 15, 1969.) It is evident from the layout of the form, then, that the signatures of the company officials were not part of the application and represent no contractual exchange between plaintiff and defendant. Those signatures and the statement that plaintiff has been employed are, rather, nothing more than a memorialization of the hiring event for internal record-keeping purposes.
Similarly, defendant’s personnel manual expresses no intent that defendant be immutably bound by the document. Nor would one expect the manual to contain any strict promissory language, given that, as the court below noted, defendant could unilaterally amend or withdraw any of the provisions found there. Nothing in either the manual or the employment application form prohibited defendant from so modifying the manual in its sole discretion. “McGraw-Hill and You” is nothing more than a conglomerate of broad internal policy guidelines generally followed, none of which even slightly portend to enumerate the essential elements of a contract of employment between defendant and an employee. No language expressing an intent to be bound appears in the personnel manual, and no such intent can fairly be construed from any of the policy guidelines espoused.
Considerations of public policy also dictate against broad judicial construction of the documents in question to present a triable issue as to whether they constitute an employment contract. It has been suggested that restricting an employer’s ability to discharge an employee for unsatisfactory performance will create additional ineffi *469 ciency in the workplace in that the employer will forego dismissing an incapable employee in order to avoid the time and expense of litigation (Report of Committee on Labor and Employment Law, At-Will Employment and the Problem of Unjust Dismissal, 36 Record of Assn of Bar of the City of New York 170, 188). A less savory result of imposing additional restrictions on the ability to discharge an employee, at least as far as the residents of this State are concerned, is that businesses and industry, the major employers in New York will simply move elsewhere.
In view of today’s record high unemployment, and considering that between 1975 and 1980 approximately 60,000 industry-related jobs in New York were lost as a direct result of business migration, I cannot join the majority’s bestowal of contractual rights based upon documents which make it all too clear that no contractual rights were ever intended.
Accordingly, I respectfully dissent and vote to affirm.
Chief Judge Cooke and Judges Jasen, Jones and Meyer concur with Judge Fuchsberg; Judge Wachtler dissents and votes to affirm in a separate opinion in which Judge Gabrielli concurs.
Order reversed, with costs, and the order of Supreme Court, New York County, reinstated.